## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  1:20-cv-24085-BLOOM/Otazo-Reyes

JOE NATHAN PYATT, JR,

      Plaintiff,

v.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES, *et al.*,

      Defendants.

_____/

### <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court upon Defendant Mayor Carlos Gimenez's ("Mayor Gimenez") Motion to Dismiss Complaint with Prejudice, ECF No. [16] ("Mayor's Motion"), and Defendants Florida International University Board of Trustee ("FIUBOT"), Alexander D. Casas ("Chief Casas"), and Allen Lowe's ("Sgt. Lowe") Motion to Dismiss, ECF No. [18] ("FIU Defendants' Motion") (collectively, "Motions"). *Pro se* Plaintiff filed a response to the Mayor's Motion, ECF No. [20], and a response to the FIU Defendants' Motion, ECF No. [21]. Mayor Gimenez filed a reply in support of his motion, ECF No. [22] ("Mayor's Reply"), and FIU Defendants filed a reply in support of their motion, ECF No. [26] ("FIU Defendants' Reply").[1] The Court has reviewed the Motions, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Mayor Gimenez's Motion is granted, and the FIU Defendants' Motion is granted.

---

[1] The FIU Defendants' Reply inaccurately lists the case number as 20-cv-24085-DLG and mistakenly labels the brief as a motion to dismiss. ECF No. [26].

## I.      BACKGROUND

This is the fourth lawsuit brought by Plaintiff, each of which alleges substantially the same allegations at issue in the present case and each of which was previously dismissed.[2]  According to the instant Complaint, ECF No. [1] ("Complaint"), Plaintiff is an alumnus of Florida International University ("FIU"). *Id.* at ¶ 4. In October 2016, Plaintiff was arrested and charged with assault with a deadly weapon arising from an incident with Donnavin Bulgin. *Id.* at ¶¶ 13-15. He was suspended from FIU for one year. *Id.* at ¶¶ 14, 18. Following his suspension, Plaintiff re-enrolled at FIU and graduated in August 2018. *Id.* at ¶¶ 18-22.

In October 2018, Plaintiff became homeless, and on December 23, 2018, he was given a trespass warning after being found sleeping in the FIU Green Library on a Sunday morning. *Id.* at ¶¶ 23-28. Plaintiff was instructed to return in January to lift the trespass warning. *Id.* at ¶ 30. On January 2, 2019, Plaintiff returned to the FIU police department lobby to lift the trespass warning, and he was subsequently arrested by Sgt. Lowe for resisting arrest without violence. *Id.* at ¶¶ 31-42. One week later, Plaintiff returned to the police department where he spoke with Chief Casas and was advised "to continue to follow the same procedures as before with regards to entering the campus." *Id.* at ¶¶ 42-45. On March 8, 2019, Plaintiff returned to the FIU campus to retrieve his property and to attend a public speaking seminar. *Id.* at ¶ 49. While on campus, Plaintiff encountered Sgt. Torres who remarked, "[d]idn't I tell you to never come back to the campus?" and "[a]ren't you suspended? You're not allowed on campus." *Id.* at ¶¶ 50-52. Plaintiff alleges that he was then arrested by Sgt. Torres for trespass after warning and disorderly conduct. *Id.* at ¶ 58.

---

[2] *See Pyatt v. Fla. Int'l Univ. Police Dep't*, Case No. 19-cv-23284-FAM ("*Pyatt I*"); *Pyatt v. Fla. Int'l Univ. Police Dep't*, 20-cv-20554-BB ("*Pyatt II*"); and *Pyatt v. Gimenez et al.*, 20-cv-20827-BB ("*Pyatt III*"). The instant action will be referred to as "*Pyatt IV*."

Based on these allegations, Plaintiff now seeks damages in excess of $100,000.00 for alleged violations of his rights under 42 U.S.C. § 1983. *Id.* at ¶¶ 1-2. The Complaint alleges two counts against "Defendant" for false arrest (Count I) and malicious prosecution (Count II). *See* ECF No. [1].

### A.    Mayor Gimenez's Motion

Mayor Gimenez moves for dismissal with prejudice because the Complaint is a shotgun pleading, Mayor Gimenez is an improper party because neither he nor any Miami-Dade County officers were alleged to be involved in the incidents, Mayor Gimenez is entitled to qualified immunity, and Plaintiff's claims fail pursuant to an indemnification clause in the Mutual Aid Agreement, ECF No. [16-3] ("Agreement"), referenced in the Complaint. ECF No. [16]. *See also* ECF No. [23] (arguing that Mayor Gimenez cannot be held vicariously liable under § 1983 based on a supervisory liability theory and that amendment is futile).

Plaintiff responds that Mayor Gimenez "is indeed vicariously liable under the Mutual Aid[] Agreement," and that the Agreement does not "explicitly state that the parties engaged in this agreement cannot be liable for the acts of employees whom are not their own." ECF No. [20] at 2-3. Further, he maintains that the Agreement is governed by Fla. Stat. § 23.127, which he states supports liability against Mayor Gimenez. *Id.* at 4-6. According to Plaintiff, Unincorporated Miami-Dade is the "proper person" for liability purposes under 42 U.S.C. § 1983, and thus, because Mayor Gimenez "in his official capacity represent[s] the municipality," Mayor Gimenez "is vicariously liable for the actions of Mr. Lowe and Mr. Torres per the Mutual Aid Agreement governed and dictated by official policies of the municipality." *Id.* at 6-7. He adds that he "cured" the previous shotgun pleading deficiencies from *Pyatt III*. *Id.* at 9. Further, he asserts that although he "does not contest that Mayor Gimenez was acting in his discretionary capacity as Mayor," Mayor Gimenez is not entitled to qualified immunity. *Id.* at 10-12.

### B.     FIU Defendants' Motion

The FIU Defendants seek dismissal with prejudice because the Complaint "is deficiently pled, fails to comport with the Court's prior rulings, and demonstrates, by Plaintiff's own admissions, that probable cause existed for the January 2019 arrest[.]" ECF No. [18] at 2. They advance several grounds for dismissal. First, the Complaint is a shotgun pleading, and Defendant has failed to cure his prior pleading errors. *Id.* at 2, 6-7. Second, the claims against FIUBOT are not actionable under § 1983 because it is not a "person" and FIUBOT, as a state agency or instrumentality, has Eleventh Amendment immunity from suit. *Id.* at 2-3, 8. Third, probable cause supports Plaintiff's January 2019 arrest because of the December 2018 trespass warning issued against him and, as such, both counts fail. *Id.* at 3, 8-11.[3] Fourth, Plaintiff fails to set forth any actionable theory of liability against Chief Casas. *Id.* at 3, 11-12. Fifth, Chief Casas and Sgt. Lowe are entitled to qualified immunity. *Id.* at 4, 12-. Sixth, any official capacity claims brought against Chief Casas and Sgt. Lowe are duplicative of claims against FIUBOT. *Id.* at 4, 14-15. Finally, any amendment is futile. *Id.* at 15.

---

[3] The Complaint alleges that Plaintiff was issued a "trespass warning" in December 2018 after he was found sleeping in the Green Library. ECF No. [1] at ¶¶ 25-29. The FIU Defendants attach to their Motion the FIU Police Department December 23, 2018 "Field Interview Notice" and "Statement of Trespass" related to that incident. ECF No. [18-1]. They seek judicial notice pursuant to Rule 201(b), Fed. R. Evid. ECF No. [18] at 5-6. The Court previously took judicial notice of this identical document in *Pyatt III*, ECF No. [34] at 4 n.5. Because the document is a public record, referenced in the Complaint, and central to Plaintiff's claims, the Court will take judicial notice of the "trespass warning." *See, e.g.*, *Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009) ("When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment."); *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1081-82 (S.D. Fla. 2019) ("A court properly takes judicial notice of relevant public records in deciding a motion to dismiss, and consideration of such documents does not convert a motion to dismiss into one for summary judgment.").

Plaintiff responds that he previously missed the amendment deadline set forth in *Pyatt III* because he was arrested and that there was no probable cause for his January 2019 arrest because he "was instructed by Mr. Greene to return to the [FIU Police Department] to lift the trespass warning." ECF No. [21] at 1-3. He argues that his Complaint is not a shotgun pleading, *id.* at 3-4, and he agrees that FIUBOT is not subject to suit under § 1983 but nonetheless claims that it is vicariously liable for the actions of its officers, *id.* at 4-7. He adds that FIUBOT is not entitled to Eleventh Amendment immunity, *id.* at 14, and that Sgt. Lowe is not entitled to qualified immunity. *Id.* at 16-17. Plaintiff asserts that leave to amend is not futile. *Id.* at 17-18.

In reply, FIU Defendants contend that Plaintiff's response "is improper as it attempts to amend the Complaint with allegations that are found nowhere in the Complaint," and that the response supports that arguable probable cause existed for his arrests on the face of the Complaint. ECF No. 26] at 2. They reiterate that FIUBOT cannot be sued under § 1983 and the Eleventh Amendment, *id.* at 2-4, Chief Casas and Sgt. Lowe are entitled to qualified immunity, *id.* at 4-6, and the Complaint is a shotgun pleading. *Id.* at 7.

The Motions, accordingly, are ripe for consideration.

## II.    LEGAL STANDARD

### A.    Motion to dismiss

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### B.    *Pro se* litigants

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This leniency, however, does not confer on *pro se* litigants "a right to receive

special advantages not bestowed on other litigants. [The *pro se* litigant] must, for example, abide

by local rules governing the proper form of pleadings." *Procup v. Strickland*, 760 F.2d 1107, 1115

(11th Cir. 1985). Further, courts cannot serve as *de facto* counsel for a party and cannot rewrite a

deficient pleading for the sake of sustaining an action. *Jarzynka v. St. Thomas Univ. of Law*, 310

F. Supp. 2d 1256, 1264 (S.D. Fla. 2004). The Court cannot simply "fill in the blanks" to infer a

claim, *Brinson v. Colon*, 2012 WL 1028878, at *1 (S.D. Ga. Mar. 26, 2012), as "it is not the Court's

duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule

8," *Sanders v. United States*, 2009 WL 1241636, at *3 (N.D. Ga. Jan. 22, 2009); *see Bivens v.*

*Roberts*, 2009 WL 411527, at *3 (S.D. Ga. Feb. 18, 2009) ("[J]udges must not raise issues and

arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic

imprecision that untrained legal minds sometimes employ." (citing *Miller v. Donald*, 541 F.3d

1091, 1100 (11th Cir. 2008))). In determining whether a *pro se* litigant has stated a claim, "the

court ought not penalize the litigant for linguistic imprecision in the more plausible allegations,"

while keeping in mind that "wildly implausible allegations in the complaint should not be taken to

be true." *Miller*, 541 F.3d at 1100.

## III. DISCUSSION

### A. The Complaint remains a shotgun pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a

"short and plain statement of the claim" that shows that the pleader is entitled to relief. Fed. R.

Civ. P. 8(a)(2). The failure to identify claims with sufficient clarity to enable the defendant to

frame a responsive pleading constitutes a "shotgun pleading" that violates Rule 8(a)(2). *Byrne v.*

*Nezhat*, 261 F.3d 1075, 1129–30 (11th Cir. 2001). The Eleventh Circuit Court of Appeals has

identified four categories of shotgun pleadings, stating

[t]hough the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

Shotgun pleadings fail to make the connection between "the substantive count and the factual predicates . . . [such that] courts cannot perform their gatekeeping function with regard to the averments of [the claim]." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279–80 (11th Cir. 2006). Courts in this district and the Eleventh Circuit have warned litigants that shotgun pleadings tend to "impede the orderly, efficient and economic disposition of disputes as well as the court's overall ability to administer justice." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1336 (S.D. Fla. 2010) (citing *Byrne*, 261 F.3d at 1128–31 (11th Cir. 2001)); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.10 (11th Cir. 2002) (expounding the various ways in which shotgun pleadings harm the courts and other litigants). "Generally, when 'a more carefully drafted complaint' might state a claim, the plaintiff must be given a chance to amend before dismissal." *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 955 (11th Cir. 2019) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)). "However, the district court need not provide such an opportunity where the

plaintiff has repeatedly failed to cure deficiencies in his complaint through previous amendments or where amendment would be futile." *Id.* (quoting *Bryant*, 252 F.3d at 1163).

In *Pyatt III*, the Court determined that the complaint in that case operated as a shotgun pleading because it "suffers from the second and fourth 'sins' of asserting multiple claims against multiple defendants without specifying which of the defendants is responsible for which acts or omissions and of alleging conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." ECF No. [34] at 9-10. The instant Complaint in this case is similarly a shotgun pleading and fails to correct the deficiencies addressed by the Court in *Pyatt III*. Most glaringly, the Complaint sues five Defendants, but each count again seeks liability against "the Defendant" for false arrest and malicious prosecution. The Court previously instructed Plaintiff that pleading in this manner is improper because "on this basis alone, it is uncertain as to what claims are asserted against which Defendants." *Pyatt III*, ECF No. [34] at 10. While the focus of his allegations in both counts appears to be largely on Sgts. Lowe and Torres, he nonetheless asserts, at least for Count I, "vicarious responsib[ility]" claims against Chief Casas, FIUBOT, and Mayor Gimenez. Thus, Plaintiff again commingles multiple claims against multiple Defendants into single counts without delineating the allegations against each Defendant. Relatedly, because he seeks liability against "the Defendant" in Count II, the Court again cannot discern whether that count is similarly asserted against Chief Casas, FIUBOT, and Mayor Gimenez.

Further, as previously expressed in *Pyatt III*, the grounds for liability alleged against Mayor Gimenez and Chief Casas remain conclusory, and vague. Mayor Gimenez is mentioned briefly in Count I's prayer for relief, but the Court remains unclear as to how Mayor Gimenez (or potentially Miami-Dade County)[4] had any involvement in this case and what his role was. The same pleading

---

[4] The Complaint does not allege a *Monell* claim.

deficiency extends to allegations against Chief Casas, who is alleged to have "treated the Plaintiff very well and with respect." ECF No. [1] at ¶ 44. Likewise, the Court previously noted that it was unclear if Mayor Gimenez was sued in his individual or official capacity. While the instant Complaint alleges that all Defendants are sued "in both their official and personal capacities," *id.* at ¶ 5, the Complaint again fails to identify which claims are purportedly brought under what capacity for each Defendant. This further amplifies the shotgun pleading nature of the Complaint. Additionally, in *Pyatt III*, the Court explained that the bases for Plaintiff's malicious prosecution claim were unclear. There, the complaint failed to allege how there was a bona fide termination of the original proceeding in his favor, and that such a claim could not be based on the January 2019 arrest because he received a *nolle prosequi* in exchange for making an apology to the arresting officers. *Pyatt III*, ECF No. [34] at 10 & 10 n.6. The instant Complaint again fails to clarify whether Count II is predicated on malicious prosecution for the 2016 arrest and prosecution or for the March 2019 arrest and charges brought against Plaintiff, or how there was a bona fide termination of charges in his favor. Simply put, contrary to Plaintiff's argument, the pleading deficiencies identified in his earlier complaint have not been "cured." Dismissal, accordingly, is appropriate on this basis alone. Nonetheless, even if the Complaint was not a shotgun pleading, it is still substantively unavailing.

> **B.      Mayor Gimenez and Chief Casas are not liable under a vicarious liability theory**

In Count I, the Complaint alleges that Chief Casas and Mayor Gimenez are "vicariously responsible for the acts of Mr. Torres and Mr. Lowe." ECF No. [1] at 9 ¶¶ C and E. Upon review, this claim fails.

As an initial matter, "[i]t is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat

superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation omitted). Instead, supervisory liability "occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* (quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990) (noting that it is "axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior")). Further, the "standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

Here, the Complaint fails to allege facts suggesting that either Chief Casas or Mayor Gimenez personally participated in the alleged false arrests or that there is a causal connection between their actions and the alleged constitutional violations. In fact, the entire theory of liability against each of these Defendants is founded on vicarious liability or respondeat superior. However, such a § 1983 claim is not actionable. *See Hartley*, 193 F.3d at 1269; *Stallworth v. Wilkins*, 802 F. App'x 435, 444–45 (11th Cir. 2020) (affirming dismissal of supervisory claims based on vicarious liability because "supervisory officials may not be held vicariously liable under § 1983 for the unconstitutional acts of their subordinates"). Accordingly, all claims against Mayor Gimenez and Chief Casas fail as a matter of law.

Moreover, even if Mayor Gimenez otherwise could be vicariously liable "for the acts of Mr. Lowe and Mr. Torres by the shared agreement in place between unincorporated Miami-Dade

and Florida International University which grants FIUPD officers arresting powers within 100 feet of the FIU into unincorporated Miami-Dade," ECF No. [1] at 9 ¶ E, Plaintiff's theory of liability is unsupported by the Complaint's allegations. In particular, the Complaint fails to set forth allegations permitting the Court to reasonably infer that Plaintiff was arrested off the FIU campus and somewhere in unincorporated Miami-Dade County. In fact, the Complaint alleges that Plaintiff was arrested in January 2019 at the FIU police department, *see id.* at ¶¶ 31-39, and in March 2019 at the FIU campus, perhaps even at the FIU police department lobby. *See id.* at ¶¶ 49-58. Therefore, even under Plaintiff's allegations as they relate to the Agreement, Miami-Dade County is uninvolved in his underlying arrests, and thus no vicarious liability theory is plausible. And still, to the extent the Agreement[5] could even apply, the Court agrees with Mayor Gimenez that under the very terms of the Agreement liability for any actions taken by FIU officers would be that of FIUBOT, not Mayor Gimenez or Miami-Dade County. *See* ECF No. [16-3] at 5(C) ("Each party engaging in any mutual cooperation and assistance pursuant to this Agreement agrees to assume responsibility for the acts, omissions, or conduct of such party's own employees[.]").

Accordingly, the claims against Mayor Gimenez and Chief Casas are dismissed with prejudice.

### C. Mayor Gimenez, Chief Casas, and Sgt. Lowe are entitled to qualified immunity

In the Motions, Mayor Gimenez, Chief Casas, and Sgt. Lowe contend that they are entitled to qualified immunity. *See* ECF Nos. [16] at 7-9; [18] at 12-14; [23] at 3-4; [26] at 4-6. Although

---

[5] In their briefings, Mayor Gimenez and Plaintiff analyze the Agreement, ECF No. [16-3], and invite the Court to examine it for purposes of considering the Mayor's Motion. Because the Agreement is a public record, the parties do not contest its contents, and it is central to Plaintiff's claims against Mayor Gimenez, the Court will consider the Agreement. *See, e.g.*, *Flournoy v. Fla. Dep't of Corr.*, No. 19-CV-23223, 2019 WL 7293359, at *3 (S.D. Fla. Dec. 30, 2019) (considering documents attached to motion to dismiss that were central to plaintiff's claims).

not fully clear from the responses, Plaintiff appears to argue that Mayor Gimenez is categorically barred from claiming qualified immunity because a municipality may not assert qualified immunity, ECF No. [20] at 10-13, and that the FIU Defendants are not entitled to qualified immunity because there was no probable cause for his arrests. ECF No. [21] at 15-17. Upon review, the Court agrees with Defendants.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law," *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The qualified immunity doctrine accordingly represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *Id.* at 1233.

"Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). To prevail on a motion to dismiss based on qualified immunity, "the public official must first prove that he was acting within the scope of

his discretionary authority when the allegedly unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).

"A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

Here, Plaintiff "does not contest that Mayor Gimenez was acting in his discretionary capacity as Mayor of Miami-Dade when the allegedly wrongful acts occurred," ECF No. [20] at 10, and he does not dispute that Chief Casas or Sgt. Torres were acting in their discretionary capacity. ECF No. [21]. Accordingly, Defendants have carried their initial burden. "Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Storck*, 354 F.3d at 1314 (citing *Lee*, 284 F.3d at 1194).

The United States Supreme Court has outlined a two-part test to determine whether a plaintiff meets its burden on rebutting a qualified immunity defense: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if a constitutional right would have been violated under the

plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Moreover, courts "may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

"[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d at 1231-32 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Lee*, 284 F.3d at 1195). "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "[I]n the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S. Ct. 3034. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Nonetheless, "[t]he Supreme Court and [the Eleventh Circuit] have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights." *Jones*, 174 F.3d at 1282 (citing *Anderson*, 483 U.S. at 639, 107 S. Ct. 3034); *see Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir. 1997) ("Plaintiffs may not discharge their burden [of

showing that a right is clearly established] by referring to general rules and abstract rights."). "Qualified immunity focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at 1132. Indeed, "'clearly established law' should not be defined 'at a high level of generality'" but "must be 'particularized' to the facts of the case" because otherwise "'[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted).

Additionally, "[b]ecause § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)). Thus, in conducting a § 1983 analysis, courts must "evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Id.*

Here, Plaintiff fails to carry his burden to show that either Mayor Gimenez, Chief Casas, or Sgt. Lowe are not entitled to qualified immunity. As to Mayor Gimenez and Chief Casas, as noted, the Complaint fails to set forth clear allegations of wrongdoing by either Defendant much less actionable claims for false arrest under § 1983. But more importantly, Plaintiffs' responses are unsupported by any authority establishing that these individuals are not entitled to qualified immunity. Therefore, Plaintiff fails to carry his burden. Similarly, regarding Sgt. Lowe, Plaintiff fails to demonstrate that qualified immunity is inapplicable.

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial." *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61

L.Ed.2d 433 (1979). "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)). Likewise, "[u]nder the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). "That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." *Marx*, 905 F.2d at 1507.

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect has committed or was committing a crime." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007); *see also Ortega*, 85 F.3d at 1525 ("Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." (citing *Marx*, 905 F.2d at 1505)). "An arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435-36 (11th Cir. 1998) (citing *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989)). "An officer, however, need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.' Furthermore, once an officer makes an arrest based upon probable cause, he 'need not 'investigate independently every claim of innocence.''" *Id.* at 1436 (quoting *Tillman*, 886 F.2d at 321). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Ortega*, 85 F.3d at 1525 (quoting *Marx*, 905 F.2d at 1506); *see Rankin*, 133 F.3d at 1436 ("Probable cause is 'judged not

with clinical detachment but with a common sense view to the realities of normal life.'"

(quoting *Marx*, 905 F.2d at 1506)).

> But even in the absence of actual probable cause, the arresting officer will be entitled to qualified immunity if he shows at least "arguable probable cause to believe that a person is committing a particular public offense." [*Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998).] We ask whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest." *Id.* at 1382. An officer's "underlying intent or motivation" is irrelevant. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). . . .
>
> The existence of arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). But "[a]rguable probable cause does not require an arresting officer to prove every element of a crime." *Scarbrough v. Myles*, 245 F.3d 1299, 1302–03 (11th Cir. 2001). . . . "The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cty. Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). "Where an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures." *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1320 (11th Cir. 2016).

*Longino v. Henry Cty., Ga.*, 791 F. App'x 828, 832–33 (11th Cir. 2019).

Here, the Complaint alleges that Plaintiff received a trespass warning in December 2018 and was reportedly instructed by Officer Green to return to FIU's campus in the Spring to get the trespass warning lifted. ECF No. [1] at ¶¶ 28, 30. He later returned to the FIU police station unannounced in January 2019, he spoke with the receptionist "with a slightly elevated tone," and Sgt. Lowe, whom Plaintiff had never seen before, then arrested Plaintiff for resisting arrest without violence. *Id.* at ¶¶ 31-41. No details are alleged regarding why Plaintiff was arrested for the announced offense nor how Sgt. Lowe's actions were otherwise unlawful, especially in light of the trespass warning against him. To be clear, while the context of the arrest is cursorily described, the Complaint alleges that Sgt. Lowe purportedly claimed that he "needed to perform a safety check on Plaintiff," and Plaintiff further alleges that he was previously suspended from school and charged with assault with a deadly weapon, and he had received two trespass warnings at FIU, one

of which was not lifted and remained in effect in January 2019 arising from an encounter with a different FIU police officer days earlier. *Id.* at ¶¶ 14-15, 18, 28, 68. In this regard, even lacking critical details as to the underlying arrest for resisting an officer without violence, based on the Complaint's allegations, arguable probable cause existed to make an arrest for violation of the trespass warning, especially as Plaintiff maintains that Sgt. Lowe "did not know that the Plaintiff was acting under direct orders of Mr. Green to return to the FIU Police station to lift the trespass warning." *See Tarpley v. Miami-Dade Cty.*, 212 F. Supp. 3d 1273, 1282 (S.D. Fla. 2016) (determining that officers were entitled to qualified immunity on false arrest and malicious prosecution claims where officers had arguable probable cause to arrest for trespass based on mistaken belief that plaintiff was on flea market property, which property plaintiff had previously received a trespass warning not to enter); *Taylor-Williams v. Rembert*, 712 F. App'x 960, 962 (11th Cir. 2017) (affirming that officer was entitled to qualified immunity because he had arguable probable cause to arrest plaintiff for trespass where officer was told plaintiff had been observed on property and officer knew that plaintiff had been given a trespass warning in the past).

Construing the allegations in a light most favorable to Plaintiff, the Court cannot conclude that Sgt. Lowe's arrest violated any constitutional right much less one that was clearly established at the time of the challenged conduct. Indeed, Plaintiff's conclusory allegation that Sgt. Lowe "did not have probable cause to believe that Plaintiff should not be there or have reason to believe that he was a threat" is unsupported by the Complaint's allegations. *Id.* at ¶ 69. Moreover, similar to his claims against Mayor Gimenez and Chief Casas, Plaintiff fails to cite to any authority demonstrating that qualified immunity is inappropriate for Sgt. Lowe. Accordingly, the claims against Mayor Gimenez, Chief Casas, and Sgt. Lowe fail on this separate ground.

### D.    The claims against FIUBOT are not cognizable

FIUBOT maintains that claims against it for violation of § 1983 fail as a matter of law because it is not a "person" under the statute[6] and it retains Eleventh Amendment immunity. ECF No. [18] at 2-3, 8. The Court agrees.

In *Pyatt II*, the Court explained that FIUBOT is not a "person" subject to suit under § 1983 and dismissed with prejudice claims against it for violation of § 1983. In particular, the Court noted that "[a] state, or state agency, such as Defendant or FIUBOT is not a 'person' within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Lumpkin v. Attorney Gen., Fla.*, 703 F. App'x 715, 718 (11th Cir. 2017) (affirming dismissal of § 1983 claim because "the State of Florida is not a 'person' for purposes of section 1983") (citing *Will*, 491 U.S. 58)); *Taylor v. Dep't of Pub. Safety*, 142 F. App'x 373, 374-75 (11th Cir. 2005) (affirming dismissal of § 1983 claims against state agencies because they are not "persons" for purposes of § 1983); *McGuire v. Fla. Lottery*, 520 F. App'x 850, 851 (11th Cir. 2013) (affirming dismissal of § 1983 complaint because the Florida Lottery does not constitute a "person" under § 1983 and enjoys immunity as a state agency pursuant to the Eleventh Amendment)." *Pyatt II*, ECF No. [10] at 8.

Plaintiff provides no basis for the Court to disturb this prior holding. In fact, he appears to "concur" that § 1983 does not allow a state to be named as a party defendant. *Pyatt IV*, ECF No.

---

[6] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Case No.  1:20-cv-24085-BLOOM/Otazo-Reyes

[21] at 5. Further, any claims against a state agency or instrumentality, such as FIUBOT, are barred by the Eleventh Amendment. *See Gould v. Fla. Atl. Univ. Bd. of Trustees*, No. 10-81210-CIV, 2011 WL 13227893, at *2-3 (S.D. Fla. June 14, 2011) (dismissing with prejudice § 1983 claims against Florida Atlantic University Board of Trustees because the Eleventh Amendment "bars 42 U.S.C. § 1983 suits against the State unless the State has waived its immunity" and "Florida has not waived its § 1983 immunity"). Moreover, the Court agrees with the FIU Defendants that to the extent the Complaint asserts "official capacity" claims against Chief Casas and Sgt. Lowe, those claims are duplicative of claims against FIUBOT and thus also nonactionable under § 1983. Accordingly, the claims against FIUBOT are dismissed with prejudice.

## E. Further amendment is unwarranted

In *Pyatt III*, the Court concluded that "in the interests of fairness and efficiency," "Plaintiff shall be given an opportunity to cure the alleged pleading errors to set forth actionable claims." *Pyatt III*, ECF No. [34] at 11. Likewise, the Court cautioned that "Plaintiff must be cognizant that the Court is not required to allow repeated opportunities to cure deficiencies where amendment is futile." *Id.*[7] Defendants contend that further leave to amend is inappropriate given the amendment opportunities previously afforded Plaintiff, his failure to correct his pleading errors, and the claims' insufficiencies on their merits. *See Pyatt IV*, ECF Nos. [16] at 9, [18] at 15, [23] at 5, [26] at 7. Upon review, the Court agrees.

This is Plaintiff's fourth attempt to seek relief based on the underlying events at FIU. The Court previously dismissed the complaint as a shotgun pleading, explained the deficiencies, and gave Plaintiff reasonable time to correct his pleading errors. However, rather than complying, he filed a new lawsuit, failed to make necessary corrective changes to state valid claims, and he

---

[7] The Court also directed Plaintiff to file an amended complaint by July 28, 2020, which he failed to do, thus prompting the Court to enter an Order closing *Pyatt III*. *See* ECF No. [37].

Case No.  1:20-cv-24085-BLOOM/Otazo-Reyes

otherwise does not show that his claims would be actionable on the merits. Therefore, no further amendment is warranted.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJDUGED** as follows:

1. The Mayor's Motion, **ECF No. [16]**, is **GRANTED**.

2. The FIU Defendants' Motion, **ECF No. [18]**, is **GRANTED**.

3. The Complaint, **ECF No. [1]**, is **DISMISSED** *WITH PREJUDICE*.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

5. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 24, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Joe Nathan Pyatt, Jr.
7840 Harding ave
Apt. 6
Miami Beach, FL 33141
Email: Joe.nathan.pyattjr@gmail.com